UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE COMPAK COMPANIES, LLC,
A FLORIDA LIMITED LIABILITY
COMPANY;

Plaintiff,

v. Case No.: 6:24-cv-01773-ACC-NWH

PHARMAWORKS, LLC, A
FLORIDA LIMITED LIABILITY
COMPANY;

Defendant,
_________________________________/

**ORDER**

This cause comes before the Court on Plaintiff The Compak Companies, LLC's ("Plaintiff") and Defendant Pharmaworks, LLC's ("Defendant") cross motions for summary judgment. (Docs. 45; 47). Each party responded in opposition to the other party's motion for summary judgment (Docs. 49; 50) and filed a reply in support of its own motion. (Docs. 51; 52). The matter is now ripe for decision. For the reasons set forth below, Plaintiff's Motion for Summary Judgment (Doc. 47) will be denied. Defendant's Motion for Summary Judgment (Doc. 45) will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is a company that sells goods for use in religious services. (Doc. 47 at 2). Formerly, one of those goods was celebration cups. (Doc. 45 at 4). Celebration cups are small plastic cups filled with grape juice and then sealed. In the seal, there is a small pocket filled with a wafer of bread. There is a separate seal placed over the wafer. (*Id.* at 5). The cups are intended to be used for communion during religious services. (Doc. 47 at 2).

Defendant is a company that manufactures thermoforming blister machines ("TF3 Machine"). (Doc. 45 at 2). A TF3 Machine creates plastic trays with individual pockets that are then filled with products. (*Id.*) Defendant agreed to sell Plaintiff a custom built TF3 Machine that it could use to produce its celebration cups. (*Id.* at 3). The machine was designed for an operator to feed plastic into the left side. (*Id.* at 5). The TF3 Machine would then heat the plastic into 50 cup trays, fill the cups with grape juice, seal them with aluminum, place the wafer on the cup's lid, and then seal the wafer. (*Id.* at 5). The machine was to be integrated with two other machines at Plaintiff's facility: one that mixed the grape juice and another that packaged the completed celebration cups. (*Id.* at 6). Plaintiff agreed to pay Defendant $2.98 million to build, install, and train Plaintiff on how to use the machine. (Doc. 45 at 3).

The parties signed a contract memorializing their agreement. (Doc. 45-1). In the contract, the parties agreed that the machine would produce 1,700 cups per minute. (*Id.* at 2). They also agreed that "SELLER DISCLAIMS AND SHALL NOT BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, OR LOST PROFITS OR LOST OPPORTUNITY, ARISING FROM OR RELATED TO THIS AGREEMENT, ANY ACTUAL OR ALLEGED BREACH HEREOF, OR THE PRODUCTS." (*Id.* at 15).

Plaintiff had three opportunities to test the machine. First, in February 2022, Plaintiff observed the machine at Defendant's factory and agreed that construction of the machine was proceeding according to the contract's specifications. (Doc. 45 at 6); (Doc. 45-7 at 103:3–8). Second, in July 2022, Plaintiff observed the machine at its facility and agreed that it performed according to specifications. (Doc. 45-5). Finally, in August 2022, Plaintiff signed a document acknowledging that the machine produced 1,742 cups per minute. (Doc. 49-9). Even so, multiple representatives from both Plaintiff and Defendant testified that the machine could never actually produce 1,700 cups per minute. (Doc. 47-2 at 181:19–182:19); (Doc. 47-3 at 77:5–12); (Doc. 47-5 at 105:4–8); (Doc. 47-7 at 48:3–15).

From March of 2022 onward, Plaintiff submitted complaints about the machine to Defendant. (Doc. 47-8). Defendant sent multiple technicians to

Plaintiff's facility to evaluate the machine, but, in the end, the parties were unable to resolve their dispute. (*Id.*) This breach of contract suit followed.

## II. LEGAL STANDARD

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party meets this burden, "[t]he burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir. 1993)).

Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices." (citation omitted)). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead [will] accept [the non-moving

party's] version of the facts drawing all justifiable inferences in [the non-movant's] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). Notwithstanding this inference, "[t]here is [still] no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen v. United Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996).

In the context of cross-motions for summary judgment, the summary judgment standard does not change. *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.,* 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008).

## III. DISCUSSION

### A. NEITHER PARTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM.

Under Florida law, the elements of an action for breach of contract are: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008)).[1] Defendant concedes that a valid contract existed. (Doc. 45 at 18). Thus, the Court focuses its attention on answering two questions: 1) are there factual

[1] The parties apparently agree that Florida law should govern this 28 U.S.C. § 1332 diversity case, so the Court applies Florida law. (*See* Doc. 45 at 11 (citing Florida law)); (*See* Doc. 47 at 7 (same)).

disputes as to whether a breach of the contract occurred? and 2) are there factual disputes as to whether Plaintiff suffered damages? The answer to both questions is yes, so summary judgment is improper.

1. *There is a Factual Dispute About Whether Defendant Breached the Contract.*

Merely summarizing the evidence in this case is almost enough to defeat either party's claim to summary judgment. Plaintiff contends that Defendant breached the contract when it failed to deliver a machine that produced 1,700 cups a minute. (Doc. 47 at 7). But there is evidence in the record that the machine could produce cups at that rate. Specifically, Plaintiff signed a document indicating that the machine produced 50 cups per index at 35 cycles per minute at a 99.5% yield —which means that the machine produced 1,742 cups per minute (35*50*.995 = 1,741.25). (See Doc. 49-9). Thus, the record contains some evidence that the machine produced at the required rate. On the other hand, the record also contains testimony from witnesses associated with Plaintiff and Defendant asserting that the machine could not produce 1,700 cups per minute. *See* (Doc. 47-2 at 181:19–182:19); (Doc. 47-3 at 77:5–12); (Doc. 47-5 at 105:4–8); (Doc. 47-7 at 48:3–15). The court cannot decide between this competing evidence on summary judgment. Rather, the existence of this factual dispute creates an issue for trial. *See Ins. Co. of N. Am. v. Perreault*, 789 F. Supp. 381, 385 (M.D. Fla. 1992) ("A factual dispute is for the trier of fact and precludes summary judgment.").

Defendant presents two arguments for why the Court should find undisputed evidence illustrates that it did not breach the contract despite this factual dispute. First, it argues that the contract, as supplemented by a relevant usage of trade, only required it to deliver a machine that produced 1,700 cups when maintained in perfect condition. (Doc. 49 at 12–15). Second, it argues that it cured any breach by sending repair technicians to the facility. (*Id.* at 15–16). Both arguments fail.

i. *Defendant Has Not Established that A Usage of Trade Supplements the Contract.*

Defendant argues that what the contract really means when it says the machine would have a total production rate of 1,700 cups per minute is that the machine would have a total production rate of 1,700 cups per minute *when maintained in perfect conditions*. (Doc. 49 at 12). Defendant claims that Plaintiff maintained the machine in poor conditions, and thus the machine was never supposed to produce 1,700 cups per minute. (*Id.* at 13–14). Put another way, Defendant argues even if the machine failed to produce 1,700 cups per minute, there can be no breach of contract because Plaintiff did not maintain the machine in perfect conditions as required.

On its face, the provision that sets a total production requirement of 1,700 cups per minute says nothing about how the machine is to be maintained. (Doc. 45-1 at 2). Nonetheless, Defendant argues that a usage of trade supplements the total production provision and requires the machine to be maintained in certain

conditions. (Doc. 49 at 12). But, to establish that, Defendant would have to prove the "existence and scope of such a usage" as a fact. *See* Fla. Stat. 671.205(3). The only factual support Defendant provides for its claims about "total production's" specialized meaning is an affidavit from one of its engineers. (*See* Doc. 49-1 at ¶ 7). In that affidavit, the engineer makes the assertion that "[t]he term 'total production' in the context of a blister machine is consistently used in the blister machine industry as a metric for the maximum quantity a machine produces in perfect conditions." (*Id.*). This single conclusory statement, unsupported by documented industry standards, examples, expert analysis, or other evidence establishing an industry-wide practice, is insufficient to convince the Court that such a trade usage actually exists. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) ("[Summary judgment evidence] cannot consist of conclusory allegations or legal conclusions.").

Because Defendant has not proven the existence of any trade usage supplementing the meaning of "total production," the Court cannot grant summary judgment based on a finding that the contract required Plaintiff to maintain the machine in perfect conditions.[2]

[2] Different courts apparently have different rules about whether trade usage evidence can be used to supplement the meaning of an unambiguous term in a contract for the sale of goods under Florida's Uniform Commercial Code. *Compare Indian Harbor Citrus, Inc. v. Poppell*, 658 So. 2d 605, 605 (Fla. 4th DCA 1995) ("We hold that when the [UCC] contract is clear and unambiguous, the contract terms may not be varied by resort to [trade usage].") *with Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1214 (M.D. Fla. 2007) ("[T]he U.C.C. allows the introduction of certain parol evidence concerning course of dealing, usage of trade, and consistent additional terms even when the contract language is unambiguous."); Fla. Stat. 672.202.

*ii. Undisputed Evidence Does Not Show Defendant Cured Any Breach*

Next, Defendant argues that it cured any breach by sending representatives to restore the machine to working order. (Doc. 45 at 12–13). But again, there are factual disputes about whether the machine actually ever reached the 1,700 cup per minute production rate required by the contract. *See* (Doc. 47-2 at 181:19–182:19); (Doc. 47-3 at 77:5-12); (Doc. 47-5 at 105:4–8); (Doc. 47-7 at 48:3–15). Thus, the undisputed evidence does not show Defendant had the machine working properly and cannot show that Defendant cured any breach through successful repair and replacement of the machine.

2. *There is a Factual Dispute About Whether Plaintiff Suffered Damages.*

Defendant also argues that the record fails to establish any damages Plaintiff suffered because Plaintiff still possesses the machine. (Doc. 45 at 13–14). But Plaintiff's answers to interrogatories establish that the machine's inoperability left the company with a product that could not be sold. (Doc. 50-4 at ¶¶ 7, 9). Thus, a reasonable jury could find that Plaintiff suffered damages in the form of paying nearly $3,000,000 for a machine that failed to perform.

Next, Defendant contends that Plaintiff failed to mitigate its damages. (Doc. 45 at 17). It is true that "[a] party must 'exercise reasonable diligence in mitigating its damages.'" *Cardinal Point, LLC v. Edgewood Partners Ins. Ctr., Inc.*, No. 22-23170-

CIV, 2024 WL 1632740, at *16 (S.D. Fla. Apr. 16, 2024) (quoting *Scotlynn USA Div., Inc. v. Titan Trans Corp.*, 555 F. Supp. 3d 1246, 1273 (M.D. Fla. 2021)). But "the failure to mitigate damages defense . . . is not a defense to liability on the contract claims." *Id.* If proven, Plaintiff's failure to mitigate would reduce its damages; it would not absolve Defendant of any liability for breach. Thus, Plaintiff's alleged failure to mitigate does not entitle Defendant to summary judgment.

**B. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE CONTRACT'S LIMITATION ON DAMAGES.**

In this action, Plaintiff seeks "special and consequential damages in the form of lost profits." (Doc. 23 at ¶ 20). But the contract between the parties contains a limitation on damages clause that expressly states Defendant: "SHALL NOT BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES, OR LOST PROFITS OR LOST OPPORTUNITY, ARISING FROM OR RELATED TO THIS AGREEMENT, ANY ACTUAL OR ALLEGED BREACH HEREOF, OR THE PRODUCTS." (Doc. 45-1).

"Contract clauses that limit liability are valid and enforceable provided the intention to limit liability is made clear in the contract." *Rosenberg v. Cape Coral Plumbing, Inc.*, 920 So. 2d 61, 64 (Fla. 2d DCA 2005); *see also TYR Tactical, LLC v. Protective Prods. Enters., LLC,* No. 15-cv-61741, 2016 WL 10647315 at *6 (S.D. Fla. Oct. 13, 2016) (collecting cases). It is difficult to imagine how the parties could

have made their intent to limit liability clearer than they did here. Unlike any other language in the contract, the limitation on liability is in all capital letters and unequivocally states that Defendant is not liable for certain types of damages arising from or related to the contract. Thus, this clause is enforceable and prevents Plaintiff from recovering any lost profits, incidental, special, or consequential damages.

Plaintiff argues that because the limitation on liability clause appears in the "warranty" section of the agreement, it only applies to damages relating to warranty-related claims. (Doc. 50 at 12). The plain text of the clause contradicts this argument. The limitation on liability clause says that Defendant shall not be liable for certain types of damages "arising from or related to the agreement or any actual or alleged breach thereof, or the products." This language demonstrates that the provision is intended to extend far beyond any warranty-related claims and cover *any* claim for breach or damages arising from the products. Thus, the placement of the limitation on damages clause in the warranty section does not create any ambiguity as to its scope. The plain language of the clause is clear, and it limits liability. *See Burlington & Rockenbach, P.A. v. L. Offs. of E. Clay Parker*, 160 So.3d 955, 958 (Fla. 5th DCA 2015) (citations omitted) ("The intent of the parties governs contract interpretation and that intent is to be determined from the plain language of the agreement and the everyday meaning of the words used.").

Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims for lost profits, consequential, incidental, or special damages. At trial, Plaintiff is still free to pursue its claims that it suffered damages when it paid nearly $3,000,000 for an allegedly defective machine. But its other claims for damages are barred by the contract.

### C. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S UNJUST ENRICHMENT CLAIMS.

"While a plaintiff can simultaneously allege the existence of an express contract and alternatively plead a claim for unjust enrichment, . . . a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter . . . ." *Innovative Healing Sys., LLC v. Mizell Mem'l Hosp., Inc.*, No. 8:25-CV-00048, 2026 WL 617428, at *16 (M.D. Fla. Mar. 5, 2026) (citations and internal quotation marks omitted). Plaintiff's unjust enrichment claim rests solely on the theory that Defendant benefited from the funds Plaintiff paid it for the machine. (Doc. 23 at ¶¶ 22–26). But both parties agree there is a contract that governs how Defendant was to build, deliver, and install the machine, and what Plaintiff was to pay for that machine. (Doc. 45 at 18); (Doc. 47 at 3). Thus, because there is an express contract covering the same subject matter, Plaintiff's unjust enrichment claim fails as a matter of law. *See Innovative Healing*, 2026 WL 617428 at *16. Accordingly, Defendant is entitled to summary judgment on Plaintiff's unjust enrichment claim—Count II of the Amended Complaint. (Doc. 23).

## IV. CONCLUSION

For these reasons Plaintiff's Motion for Summary Judgment will be denied and Defendant's Motion for Summary Judgment will be granted in part and denied in part. The parties will proceed to trial on Plaintiff's remaining claims and Defendant's counterclaims with the evidence relating to damages limited in accordance with the requirements of this order.

Based on the foregoing it is **ORDERED**:

1. Defendant Pharmaworks LLC's Motion for Summary Judgment (Doc. 45) is **GRANTED IN PART** and **DENIED IN PART** and **GRANTED** as to Count II.
2. Plaintiff The Compak Companies LLC's Motion for Summary Judgment (Doc. 47) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on November 12, 2026.

/s/ Anne C. Conway
Anne C. Conway
United States District Judge